**Stephen John PILARSKI, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 79S00–9212–CR–956.

Supreme Court of Indiana.

June 8, 1994.

John M. Sorensen, Lafayette, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of Murder. He was sentenced to a term of sixty (60) years.

The facts are: On April 21, 1992, Ariel Ehler, the one-year-old victim in this case, was at home with her mother, Donna Marie Ehler, her two-year-old sister Audra, and appellant. At approximately 12:30 p.m., Donna left her children with appellant and went to make a telephone call. When Donna returned, she found Ariel lying on the living room floor with a bruised face and coughing up blood. Donna immediately took Ariel next door where an ambulance was called.

Ariel was taken to the Saint Elizabeth Hospital Emergency Room where she was examined by Dr. Jeffery L. Creculius, a neurosurgeon. Dr. Creculius observed that there was a swelling of the brain and hemorrhage in certain spaces around the brain. Because Ariel was in need of intensive pediatric care, a helicopter was dispatched to take her to Methodist Hospital. Ariel died en route to Methodist Hospital.

A pathologist, Dr. Richard Harruff, who performed the autopsy on Ariel observed that Ariel had contusions and abrasions on her face, head and scalp; a fracture of the bone in the back of her head; and bleeding into the coverings around the brain and bruising of the brain itself. He determined that the cause of death was blunt force injuries. The pattern of the injuries was consistent with homicide.

The police arrived at the scene of the crime after receiving a radio dispatch concerning a beaten child. Officer Quinten Robinson testified that he talked with Donna and thereafter went into Donna's apartment with Officer Michael Roberts where they found appellant. Officer Robinson testified that he observed blood on appellant's hands and pants. Appellant was handcuffed and transported to police headquarters.

At police headquarters, lifts of blood were collected from appellant's hands to compare to that of the victim. It was determined that the lift from appellant's right palm was consistent with his and the victim's blood. Also, appellant's blue jeans contained human blood which was consistent with a mixture of body fluids from the victim and appellant.

Detective Michael Roswarski advised appellant of his *Miranda* rights, and appellant signed a waiver of rights form. Appellant informed Detective Roswarski that he struck the victim five or six times in the face because she was moaning and groaning. Ap-

pellant subsequently was charged with murder.

■ Appellant contends the trial court erred by refusing to read his Tendered Instruction No. 1. The tendered instruction stated:

The crime of murder is defined by statute as follows:

A person who knowingly or intentionally kills another human being commits murder, a felony.

To convict the defendant, the state must have proved each of the following elements:

The defendant

1. knowingly or intentionally,
2. acting with the intent to kill,
3. killed,
4. a human being, Ariel Ehler.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of murder, a felony. `

The court gave the following instruction:

"To convict the Defendant, the State must have proved each of the following elements: The Defendant, one, knowingly or intentionally, two, killed, three, Ariel Elaine Ehler. If the State failed to proved each of these elements beyond a reasonable doubt, you should find the Defendant not guilty. If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of murder, a felony. Now a person engages in conduct intentionally if when he engages in the conduct, it is his conscious objective to do so. A person engages in conduct knowingly if, when he engages in this conduct he is aware of a high probability that he is doing so."

■ Upon review of an issue concerning the giving or refusal of an instruction, we consider whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions. *Hill v. State* (1993), Ind., 615 N.E.2d 97.

To support his tendered instruction, appellant relies on *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. In *Spradlin*, this Court held that a jury instruction was insufficient because it failed to inform the jury of the necessity of finding that the defendant acted with specific intent to kill the victim before they found the defendant guilty of attempted murder. The instant case is distinguishable from *Spradlin*. Unlike the defendant in *Spradlin* who was charged with attempted murder, appellant was charged with murder.

■ The intent to commit murder may be inferred from the nature of the attack and the circumstances surrounding the crime. *Nunn v. State* (1992), Ind., 601 N.E.2d 334. The trial court's instruction is a correct statement of the law. The trial court did not err in refusing the tendered instruction.

■ Appellant claims the trial court erred by allowing in evidence statements which he made to the police. He contends the statements were inadmissible because they were obtained in violation of his fifth, sixth, and fourteenth amendment rights. Appellant claims his statements were obtained by the police after he asserted his right to counsel and right to remain silent.

■ The Fifth and Fourteenth Amendments to the United States Constitution secure each citizen the right to the presence and advice of counsel during custodial interrogation by the police. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Once the suspect asserts his right to counsel, the interrogation must cease until counsel has been made available to him or until the suspect initiates further communication with the police and knowingly and intelligently waives the right to counsel which he previously invoked. *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Oregon v. Bradshaw* (1983), 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405. If a suspect's request for counsel is perceived to be inherently ambiguous or equivocal in light of the preceding events,

any further questioning should be narrowly limited to clarifying whether the suspect actually wished to have counsel present. *Jackson v. State* (1992), Ind., 597 N.E.2d 950; *Sleek v. State* (1986), Ind., 499 N.E.2d 751.

In the present case, appellant was arrested at the apartment of Donna Ehler by Officers Quinten Robinson and Michael Roberts. Officer Roberts immediately read him the *Miranda* warnings. Afterwards, appellant was asked if he understood his rights to which he answered in the affirmative; he then informed the officers that he did not want to talk to them. Appellant claims it was at this point that he invoked his right to counsel. Officer Robinson, who was standing next to appellant, testified at the trial that he did not hear him ask for a lawyer. However, Officer Roberts testified that he heard appellant mumbling something that he thought was a request for a lawyer.

The officers did not ask appellant any more questions at that time. They transported him to the police station. Approximately ninety minutes after appellant was arrested, he was taken to Officer Anthony Roswarski's office. Because he was informed that appellant did not want to talk to the police and may have requested a lawyer, Officer Roswarski advised appellant of his *Miranda* rights once again. Appellant then signed a waiver of rights form and gave his statement.

The trial court ruled that appellant's statements made to the police were admissible. We agree with that ruling. Appellant's mumbling after his initial *Miranda* advisement raised the question of whether he asserted his right to counsel. Consequently, he was informed of his rights once again prior to his statements. It was proper for the police to follow this procedure to clarify whether appellant wished to have a lawyer present. Appellant knowingly and intelligently waived his right to counsel and his statements were admissible at trial.

◼︎ Appellant also claims his statements were obtained by the police after he asserted his right to remain silent. In *Moore v. State* (1986), Ind., 498 N.E.2d 1, this Court held that when the accused invokes his right to remain silent, the police

must "scrupulously honor" his right to cut off questioning. The police must cease questioning immediately and may resume questioning only after the passage of a significant amount of time and after giving a fresh set of *Miranda* warnings. *Id.*

In the present case, the police commenced the questioning of appellant approximately ninety minutes after he allegedly invoked his right to remain silent and after he was read the *Miranda* warnings again. Inasmuch as it was unclear as to whether appellant had requested counsel, it was proper to make inquiry of appellant in that regard. *Moore, supra.* Upon such inquiry appellant voluntarily decided to make a statement. The trial court did not err in admitting appellant's statements made to the police.

◼︎ Appellant claims the trial court erred by admitting State's Exhibit No. 20 which was a photograph showing the victim hooked to a life support system with multiple bruises on her face. Appellant argues that the photograph was prejudicial and inflammatory.

◼︎ Admission of photographs is within the sound discretion of the trial court. *Williams v. State* (1990), Ind., 555 N.E.2d 133. We will not disturb that decision on appeal unless there is an abuse of that discretion. *Id.* Photographs are generally admissible if they depict an object or scene which a witness would be permitted to describe in his or her testimony. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290.

In the present case, the photograph was introduced during the testimony of Dr. Creculius, who examined the victim. The photograph was used by the State for Dr. Creculius to demonstrate his testimony as to how he observed the victim on the life support system. The photograph was illustrative of the nature and extent of the victim's injuries and was properly admitted during the testimony of Dr. Creculius. *Id.; Christopher v. State* (1987), Ind., 511 N.E.2d 1019.

We have held that a relevant photograph is correctly admitted in evidence unless it is inflammatory in nature and that this outweighs its relevancy. *Games v. State* (1989),

Ind., 535 N.E.2d 530, *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158, *reh'g. denied,* 493 U.S. 985, 110 S.Ct. 523, 107 L.Ed.2d 523. However, we do not believe the photograph was inflammatory or prejudicial.

The State has correctly pointed out that this Court has held in *Komyatti v. State* (1986), Ind., 490 N.E.2d 279, that admission of photographs of a dismembered corpse was not unduly prejudicial and in *Shelton v. State* (1986), Ind., 490 N.E.2d 738, that admission of photographs of a decomposed body was not reversible error. We find no error in the admission of the exhibit.

Appellant claims the trial court erred when it denied his motion to view welfare reports on Audra and Ariel Ehler. During preparation for trial, appellant issued subpoenas to the Tippecanoe County Department of Public Welfare and the Division of Family and Children requesting the reports made on Audra and Ariel. Appellant claims his purpose for wanting access to the reports was to determine if the contents of the reports contained anything that could be used to impeach the expected testimony of Donna Ehler.

The Tippecanoe County Department of Public Welfare subsequently filed a motion to quash appellant's subpoena. The trial court held a hearing on the matter and conducted an *in camera* inspection of the welfare report. The trial court found the reports contained no exculpatory material and thereafter granted the motion to quash.

In preparation for appeal, appellant filed a motion to view the reports, which the court denied. Appellant claims the trial court's decision to deny his motion violates his right to appeal his case.

Indiana Code § 31-6-11-18 provides that reports of child abuse or neglect shall be confidential and reads in relevant part:

"(a) Reports made under this chapter, and any other information obtained, reports written or photographs taken concerning such reports in the possession of the department, the county department of public welfare, or the local child protection service are confidential and shall be made available only to those persons authorized by this chapter and to:

\*   \*   \*   \*   \*   \*

(8) a court, upon its finding that access to the records may be necessary for determination of an issue before the court, but access is limited to in camera inspection, unless the court determines that public disclosure of the information contained in the records is necessary for the resolution of an issue then pending before it; ...."

Appellant cites *Sturgill v. State* (1986), Ind.App., 497 N.E.2d 1070, to support his contention that he had a right of access to the Welfare Department files. Appellant pointed out that the court of appeals found the following in *Sturgill:*

"We therefore hold that Ind.Code § 31-6-11-18, is unconstitutional as it was applied to the facts of the case under consideration. The Defendant was denied a fair trial. At the very least, the trial court should have conducted an *in camera* inspection of T.S.'s statements given to the welfare department pursuant to I.C. 31-6-11-18(a)(8) to determine whether any of the statements benefited Sturgill's defense. Since the trial court abused its discretion, we reverse." *Id.* at 1073.

In *Sturgill,* the defendant was charged with molesting his stepdaughter who reported the molestation to the county welfare department and testified at trial. The defendant sought discovery of his stepdaughter's statements to the welfare department. The trial court denied the defendant's motion to compel production of the statements. The Court of Appeals held that the defendant's interest in discovery must be balanced against the state's interest in nondisclosure. *Id.* They further held that the trial court is vested with discretion in weighing the various factors. *Id.*

The instant case is distinguishable from *Sturgill.* Unlike in *Sturgill,* the trial court conducted an *in camera* inspection of the records in question and made a finding that it contained no exculpatory information for appellant. The trial court correctly followed

the procedure set out in Ind.Code § 31–6–11–18(a)(8).

Appellant claims the trial court's decision to deny him access to the welfare reports violates his right to appeal. Notwithstanding the trial court's decision, appellant has the right to appeal the issue of disclosure of the reports. While he is precluded from viewing the welfare reports, appellant's interests are protected by this Court's review of the trial judge's exercise of discretion in the matter. This Court has the authority to reverse the trial court's decision if it was made in clear error and resulted in prejudice. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. However, based on this Court's own *in camera* inspection of the records, we find no abuse of discretion by the trial court.

Appellant claims the evidence was insufficient to support the conviction. On review of a question of sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of the witnesses. *Miller v. State* (1990), Ind., 563 N.E.2d 578. We will consider only that evidence which supports the verdicts and all reasonable inferences to be drawn therefrom. *Id.* The findings made by the trier of fact will not be disturbed where there is substantial evidence of probative value to support the conviction. *Id.*

The State offered a statement given by appellant in which he admitted striking the victim in the face five or six times. The State's pathologist, Dr. Richard Harruff, testified that the death of the victim was caused by blunt force injuries to the head, inflicted by at least two blows. Further, it was determined that a lift from appellant's right palm was consistent with his and the victim's blood. Moreover, his blue jeans contained human blood consistent with his body fluids and that of the victim. This evidence is sufficient to support the conviction.

Appellant, however, argues that the State failed to provide sufficient evidence to establish his intent to commit the crime, citing *Nunn, supra.* In *Nunn,* this Court held that the intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime. *Id.* We additionally said that, where blows of magnitude are repeated, a jury could conclude that the defendant had an intent to kill. *Id.* In light of the numerous times appellant struck the one-year-old victim in the face, the jury was permitted to make an inference of appellant's intent to kill.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.