**Adrian L. BROOME, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A05–9604–CR–131.

Court of Appeals of Indiana.

Nov. 14, 1997.

Rehearing Denied Jan. 16, 1998.

Sandra M. Oakes, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Adrian Broome appeals his conviction, following a jury trial, of voluntary manslaughter, a Class A felony. He has raised the following issues:

1. Was the trial court required to respond to Broome's request for a speedy trial?

2. Did Broome receive ineffective assistance of counsel at his trial?

3. Did the trial judge abuse his discretion when he presided over a change of judge hearing when he was the judge who was sought to be changed?

4. Did the trial judge abuse his discretion when he denied a request for change of judge?

5. Did the trial judge err when he denied Broome's motion for change of venue?

6. Did the trial judge erroneously admit evidence of Broome's confession and of other statements which Broome made in the presence of law enforcement officers?

7. Did the trial judge err when he refused to admit evidence proffered by Broome?

8. Were the trial court's jury instructions erroneous?

9. Did the trial judge err when he refused to provide the jury with an involuntary manslaughter instruction?

10. Was the evidence sufficient to support Broome's conviction?

11. Was Broome prejudiced by the trial judge's reliance on the presentence investigation report?

12. Is Broome's 45–year prison sentence manifestly unreasonable?

We affirm.

### THE FACTS

The facts which are most favorable to the verdict indicate that on April 9, 1995, Joe Murray was driving his truck in Anderson, Indiana. Seeing Adrian Broome standing on a sidewalk, Murray stopped his truck and offered Broome a ride. Broome got into the truck, and Murray eventually drove him from Anderson to Hamilton County.

In Hamilton County, Murray parked his truck on a country road. When the truck was parked, Murray attempted to perform oral sex on Broome. Attempting to repel this sexual advance, Broome pointed a gun at Murray. The two men then struggled for possession of the gun. During the struggle, Broome hit Murray in the head with the gun and shot Murray in the face. Murray died from his gunshot wound. His body, which had fallen out of the truck when Broome opened its door, was later found to be resting on that portion of the country road where the truck had been parked. Broome drove the truck away from the scene of Murray's death and left it in Anderson at Shadyside Park.

Broome, when he was questioned by police, confessed that he shot and killed Murray. He was charged with murder, and, in a jury trial, he was convicted of voluntary manslaughter. Broome was sentenced to 45 years in prison.

### REQUEST FOR A SPEEDY TRIAL

Broome asserts that the trial court erred when it failed to respond to his request for a speedy trial. At his pretrial hearing of June 15, 1995, Broome attempted to address the court, but he was not permitted to do so. He wished to request a speedy trial under Indiana Criminal Rule 4(B)(1), and his counsel made the court aware of this.

■ Broome claims that he made a pro se motion when he requested a speedy trial at his pretrial hearing. But Broome, because he was represented by counsel when he made his request, could not have been acting pro se. "[A]s a practical matter, a decision to proceed to trial with counsel is necessarily a relinquishment of the pro se right, and vice-versa." *Russell v. State,* 270 Ind. 55, 59, 383 N.E.2d 309, 312 (1978).

■ Because Broome requested a speedy trial when he was represented by counsel, the trial court was not required to respond to his request. When a defendant is represented by an attorney and attempts to file a pro se motion, it is "within the trial court's discretion to accept and respond to it or to strike it." *Kindred v. State,* 521 N.E.2d 320, 325 (Ind.1988). Broome claims that *Kindred* does not give the trial court discretion to ignore his speedy trial request; he argues that *Kindred* limits a trial court's discretion to the ability to strike, or to accept and respond to, a represented defendant's request. We are not persuaded by this argument. "Where defendants attempt a sort of 'hybrid representation' ..., representing themselves as co-counsel along with their attorneys, the question is one in which the trial judge exercises wide discretion because no constitutional right to hybrid representation exists." *Bradberry v. State,* 266 Ind. 530, 537, 364 N.E.2d 1183, 1187 (1977). In order to properly effectuate the wide discretion a trial court enjoys in instances of hybrid representation, a trial court's discretion must not only consist of the ability to strike, or to accept and respond to, a represented defendant's request, but must also include the ability to ignore such a request. The trial court therefore did not err when it failed to respond to Broome's request.[1]

---

**1.** Broome seems to suggest that *State v. Greenwood,* 665 N.E.2d 579 (Ind.1996), indirectly stands for the proposition that a defendant is not bound by the acts of his attorney when the defendant objects to his attorney's actions. In *Greenwood,* a defendant, acting pro se, filed notice of

### ASSISTANCE OF COUNSEL

■ Broome claims that he received ineffective assistance of counsel because his attorney, at the pretrial hearing, failed to move for the speedy trial which Broome requested.

In order to show ineffective assistance of counsel, Appellant must establish [1] that counsel's performance was deficient and [2] that such deficiency prejudiced his case. Appellant must show that in light of the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with elaborated prevailing professional norms. He must further show there is a reasonable probability but for counsel's unprofessional error the result of the proceedings would have been different.

*Haggenjos v. State,* 493 N.E.2d 448, 451 (Ind. 1986). "It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Steele v. State,* 536 N.E.2d 292, 293 (Ind.1989).

At his motion hearing of August 10, 1995, Broome made it clear to the court and to his attorney that it had been his intention, at his pretrial hearing, to request a speedy trial.

Broome claims that his attorney, because he knew of Broome's request and nevertheless failed to move for a speedy·trial, exhibited performance which was inconsistent with prevailing professional norms and which was therefore deficient. To support his claim, he stresses that an attorney "shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued." Ind. Professional Conduct Rule 1.2(a).[2] Broome contends that to execute a speedy trial motion at his pretrial hearing was an objective of the representation which his attorney was required to, but did not, abide by.

■ To resolve Broome's argument, we must determine whether the making of a speedy trial motion is an "objective" of representation. The rules of professional conduct distinguish between the *objectives* of representation and the *means* of representation. "In questions of means, the lawyer should assume responsibility for technical and legal tactical issues...." Prof. Cond. R. 1.2 cmt. Although "[a] clear distinction between objectives and means sometimes cannot be drawn," Prof. Cond. R. 1.2 cmt., we believe that the filing of a speedy trial motion is a

his demand for a speedy trial pursuant to the Interstate Agreement on Detainers (IAD). 665 N.E.2d at 580. Under the IAD, a defendant must be brought to trial within 180 days of the time he delivers proper notice to particular authorities. Ind.Code § 35–33–10–4. The defendant then sought to dismiss the charges pending against him, claiming that he had not been brought to trial within the 180–day period. *Greenwood,* 665 N.E.2d at 580. The *Greenwood* court, concluding that the defendant waived his right to have a speedy trial within the 180–day period, noted that the defendant did not object when his attorney, in his presence, moved to have his trial rescheduled for a date outside of the 180–day period. 665 N.E.2d at 582. According to the court, "[s]uch failure to object constitutes acquiescence." *Id.*

Broome seems to assume that the defendant in *Greenwood,* had he objected to rather than acquiesced in counsel's actions, would not have waived his right to a speedy trial under the IAD. On the basis of this assumption, he appears to contend that because "[t]he record shows neither acquiescence nor failure to object on the part of the Defendant himself[,]" Appellant's Reply Brief at 6, the trial court was required to respond to his request for a speedy trial.

Broome's reliance on *Greenwood* is misplaced. At issue in *Greenwood* was a pro se motion which the defendant had filed before he was represented by counsel. Because the defendant was solely responsible for filing that motion, he, and not his attorney, was ultimately responsible for deciding whether to pursue the goal of a speedy trial for which his motion was filed. Had the defendant wished to pursue that goal, it would have been necessary for him to object to his attorney's actions. But Broome made a request for a speedy trial while he was represented by counsel. Because Broome did not make a pro se request, his attorney, and not he, was ultimately responsible for deciding whether to pursue the goal of a speedy trial. Under these circumstances, Broome was bound by his attorney's decision not to move for a speedy trial, and the trial court was not required to respond to Broome's speedy trial request.

2. Broome invokes the Indiana Rules of Professional Conduct not because he believes his attorney has engaged in professional misconduct, but rather because these rules are an expression of prevailing professional norms with which, in an ineffective assistance action, an attorney's conduct may be compared.

tactical issue, that it relates to the means of representation, and that it is therefore a duty for which the defendant's attorney is responsible. If a defendant wishes to assume responsibility for filing a speedy trial motion, he may represent himself pro se. But if a defendant decides to be represented by counsel, he must be prepared to accept that "law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas." *Bradberry*, 266 Ind. at 536–37, 364 N.E.2d at 1187 (quoting *Faretta v. California*, 422 U.S. 806, 820–21, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 573 (1975)). The failure of Broome's attorney to move, at Broome's request, for a speedy trial is therefore consistent with the prevailing professional norm expressed in Professional Conduct Rule 1.2(a). We conclude that the performance of Broome's attorney was not deficient and was within the range of effective assistance.

### CHANGE OF JUDGE

Before his trial, Broome moved for a change of judge under Criminal Rule 12(B), which states:

> In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

Before a hearing on this motion was held, Broome objected to the fact that the trial judge, whom Broome sought to remove, intended to preside at the hearing on this motion. He argued that the trial judge was

required to recuse himself and to permit another judge to preside at the hearing.

The trial judge believed this objection was without merit. Nothing in Criminal Rule 12(B) indicates that a presiding judge must recuse himself when a motion for change of judge comes before him. The only authority Broome presents in support of his objection is *Gray v. State*, 450 N.E.2d 125, 126 n. 1 (Ind.Ct.App.1983), in which we held that the appellant had waived the right to raise the issue of whether the presiding judge, when presented with a change of judge motion, must recuse himself. We cannot agree that this holding of *Gray* supports, even by implication, the proposition that a presiding judge may not hear a motion for change of judge. Finding no reason to depart from current Indiana practice in which a presiding judge is not only competent to determine the sufficiency of the affidavits required by the change of judge rule, but also is permitted to hear the motion for change of judge, we conclude that a presiding judge against whom a change of judge motion is directed may, but need not, recuse himself when a hearing on the motion is necessary.

Broome also contends that the trial judge erred when he denied Broome's motion for change of judge. He argues that he was entitled to a change of judge because the facts presented in his affidavit satisfied the requirements of Criminal Rule 12(B).[3] In his affidavit which supported his motion for change of judge, Broome recited the following historical facts:

That the presiding judge herein was the Hamilton County Prosecutor until January, 1995.

That in his job as prosecutor, the judge herein hired, trained and supervised the prosecutor on my case.

That in his job as prosecutor, the judge herein acted as the chief law en-

---

**3.** To support his claim that he was entitled to a change of judge, Broome also argues that the trial judge failed to act in accordance with the Indiana Code of Judicial Conduct. But we note that our inquiry, under Criminal Rule 12(B), will be confined to whether the historical facts recited in Broome's affidavit support a rational inference of the trial judge's bias or of his prejudice. The trial judge's compliance or noncompliance with the Code of Judicial Conduct is not relevant to our inquiry and, of course, is not reviewable by this court. *See* Admis. Disc. R. 23(1).

forcement officer for Hamilton County and counseled and trained many local law officers.

R. 29. Broome has failed to cite, and we cannot find, any authority which would suggest that a rational inference of bias or of prejudice may be inferred from the existence of those personal relationships described in his affidavit. We are persuaded that the historical facts recited by Broome, without more, do not support a rational inference of the trial judge's bias or of his prejudice. The trial judge therefore committed no error when he denied Broome's motion for change of judge.

### CHANGE OF VENUE

■ Broome argues that the trial judge abused his discretion when he denied Broome's motion for change of venue. A trial court ruling on a change of venue motion is reviewed for abuse of discretion. *Bradley v. State,* 649 N.E.2d 100, 108 (Ind. 1995). But we decline to review the trial court's exercise of discretion in this instance because Broome has failed to preserve his right to challenge a change of venue ruling.

■ Because two of the jurors who heard his case were exposed to pretrial publicity, Broome claims that he was entitled to a change of venue. But Broome did not use all of his peremptory challenges during the voir dire process. After his jury was selected, two of his peremptory challenges remained unused. R. 231. "In order to prove error in the denial of a motion for change of venue from the county, the defendant must show that he exhausted his peremptory challenges in an effort to secure juror impartiality." *Neal v. State,* 506 N.E.2d 1116, 1123 (Ind.Ct.App.1987); *see also Quarles v. State,* 223 Ind. 652, 654, 63 N.E.2d 849, 849 (1945). Had Broome found two particular jurors objectionable, it would have been within his power to exclude them from the jury panel by exercising his two peremptory challenges. Because Broome did not do this, he cannot challenge, on appeal, the trial court's change of venue ruling.

### ADMISSION OF EVIDENCE

■ Shortly after Murray was killed, Broome participated in a videotaped interview which was conducted by the police and in which he confessed that he shot Murray. Before he was questioned, Broome was advised of his *Miranda* rights and signed a form which indicated that he understood his rights. During the interview, but before his confession was made, Broome declared to his interrogators "I'm about to end this." After Broome's declaration, the interrogators continued to ask questions, and Broome continued to give answers. Broome argues that his declaration was a request for counsel, that the confession which was obtained after his declaration is inadmissible, and that therefore the trial court erred when it denied his motion to suppress evidence of his confession.

> The Fifth and Fourteenth Amendments to the United States Constitution secure to each citizen the right to the presence and advice of counsel during custodial interrogation by the police. A confession of guilt procured from a subject during custodial interrogation is not admissible in a trial of criminal charges in the absence of proof beyond a reasonable doubt that counsel was present or the right thereto was voluntarily and knowingly relinquished prior to the commencement of the interrogation. When the right of counsel is asserted during questioning, that process must cease, and a confession procured by interrogators thereafter is per se inadmissible in the absence of a new waiver of counsel evidenced by proof that the suspect initiated the resumption of questioning.

*Clark v. State,* 465 N.E.2d 1090, 1091 (Ind. 1984) (citations omitted). "If a suspect's request for counsel is perceived to be inherently ambiguous, or equivocal in light of the preceding events, any further questioning should be narrowly limited to clarifying whether the suspect actually wished to have counsel present." *Jackson v. State,* 597 N.E.2d 950, 959 (Ind.1992) (quoting *Sleek v. State,* 499 N.E.2d 751, 754 (Ind.1986)).

■ Broome argues that the phrase "I'm about to end this" is a request for counsel which required the police to cease interroga-

tion and which, even if perceived to be inherently ambiguous, at least required the police to ask questions for the sole purpose of determining whether Broome desired the presence of counsel. Broome finds congruence between his declaration and that made by the defendant in *Pilarski v. State*, 635 N.E.2d 166 (Ind.1994). In *Pilarski*, the defendant, during a custodial interrogation, mumbled an utterance which one of his interrogators thought might be a request for counsel. 635 N.E.2d .at 170. Hearing the defendant's utterance, the police officers who were conducting the interrogation immediately ceased to question the defendant; they later attempted to clarify whether the defendant was claiming the right to counsel. *Id.* The court found the interrogators' behavior to be proper,·noting that the defendant's "mumbling after his initial *Miranda* advisement raised the question of whether he asserted his right to counsel." *Id.*

Broome argues that his declaration was a less ambiguous request for counsel than was the defendant's declaration in *Pilarski*, and that therefore the right of Broome's interrogators to question him was abrogated by·his declaration. We find Broome's reliance on *Pilarski* to be misplaced. The defendant's mumbled utterance in *Pilarski* was thought by one of the interrogators to be a claim of counsel. It was proper, in such a situation, for the defendant's interrogation to cease because the utterance was *perceived* to be an inherently ambiguous request for counsel. But Broome's declaration was not perceived to be an ambiguous request for counsel, nor could it have been so perceived. We find support for this proposition in *Vail v. State*, 536 N.E.2d 302, 303 (Ind.Ct.App.1989), in which the defendant, during a custodial interrogation, declared that "If I have to do it, I'm going to have to get Langston for my lawyer again." It was held that the defendant's declaration, in which reference·to an attorney was made, was not a request for counsel. *Id.* We conclude that Broome's declaration, in which no reference to an attorney was made, was also not a request for counsel.

■ Broome also argues that his declaration, even if it cannot be interpreted to be a request for counsel, can be interpreted to be an assertion of his right to remain silent which required the police to cease interrogation. "[W]hen the accused invokes his right to remain silent, the police must 'scrupulously honor' his right to cut off questioning. The police must cease questioning immediately and may resume questioning only after the passage of a significant amount of time and after giving a fresh set of *Miranda* warnings." *Pilarski*, 635 N.E.2d at 170 (citing *Moore v. State*, 498 N.E.2d 1, 5–10 (Ind. 1986)).

■ We are led to reject Broome's argument when we compare the defendant's declaration in *Vail* with Broome's declaration. By saying "I'm about to end this," Broome was not declaring a present fact—i.e., that the interrogation had ended—but was rather stating what he believed might soon occur. By saying "If I have to do it," the defendant in *Vail* also was not declaring a present fact, but was rather making a conditional statement. The *Vail* court found that the defendant's declaration was not an assertion of the right to remain silent. 536 N.E.2d at 303. We reach the same conclusion with respect to Broome, holding that he did not assert the right to remain silent.when he made his declaration. We therefore find that the trial court, when it denied Broome's motion to suppress evidence of his confession, did not err.

Broome also asserts that the trial court erred when it denied his motion to suppress evidence of statements he made to police officers during his incarceration. Broome, while he was being "booked" and "processed" in jail, initiated a conversation with one of the officers. Broome asked whether he might be found not guilty if he were to assert a self-defense claim, and the officer answered that "it would depend on what happened" and that Broome "would need to talk to an attorney about that." R.1996. After hearing the officer's answer, Broome "just kept on talking" and began to relate the facts of his case to the officer. R.1996. Broome asserts that evidence of his statements should not have been admitted because the officer's answer to Broome's question, which occurred during custodial interrogation, was designed

to elicit a response from Broome, who had not been advised of his *Miranda* rights.

■ Although we agree that Broome was in custody during his conversation with the police officer, we cannot agree that the officer's statements were interrogatory or that they were designed to elicit Broome's response. "Under *Miranda*, the term 'interrogation' refers to express questioning, and also to 'any words and actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Schick v. State*, 570 N.E.2d 918, 922 (Ind.Ct. App.1991) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)). "Interrogation occurs when a person in custody is subjected either to express questioning or its functional equivalent, and reflects a measure of compulsion above and beyond that inherent in custody itself." *Malott v. State*, 485 N.E.2d 879, 883 (Ind.1985). Interrogation does not occur when a law enforcement officer does nothing more than provide a direct answer to a suspect's unsolicited inquiry. *See Smith v. State*, 275 Ind. 642, 647–48, 419 N.E.2d 743, 747 (1981); *Munn v. State*, 505 N.E.2d 782, 786–87 (Ind.1987). The police officer, by providing a direct answer to Broome's inquiry, did not elicit statements which were the product of custodial interrogation. The trial court therefore did not err when it denied his motion to suppress evidence of these statements.

■ Broome asserts that the trial court erred when it admitted evidence of another statement he made while incarcerated. When news reporters appeared at the jail, a police officer asked Broome whether he wished to grant the reporters a televised interview. Broome stated in response that he desired to appear on television so that he might explain why he "popped" Murray. Again, Broome argues that his statement is inadmissible because he was not advised of his rights during this custodial interrogation. We are unpersuaded by this argument because Broome's statement was not the result of interrogation.

Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation. Rather, it is necessary to view the statement in the context in which it was made. If, after having done so, it does not appear that the purpose of the remark was to obtain a confession from the accused, *Miranda* is not triggered and it is not necessary that the accused first be advised of his rights.

*Johnson v. State*, 269 Ind. 370, 377, 380 N.E.2d 1236, 1240 (1978) (citation omitted). Because we believe that the officer's inquiry was not calculated to obtain a confession, the trial court did not err when it admitted evidence of Broome's statement.

■ Broome also contends that the trial court improperly admitted evidence of a third statement which was attributed to him and which was made during his incarceration. At trial, a police officer testified that, during the regular course of her duties, she overheard, but did not observe, a conversation between prison inmates in which one of the inmates stated that he killed a homosexual man. The officer also testified that she determined who the conversing inmates were, that Broome was among them, and that Broome was the only one of them whose criminal charge involved the death of another person.

■ Broome seems to contend that his overheard statement was obtained in violation of *Miranda*. This contention has no merit. We are convinced that Broome's overheard statement was made voluntarily and without solicitation. "A wholly volunteered and unsolicited statement by the accused is not the product of a custodial interrogation such that any advisement of rights need be given." *Tacy v. State*, 452 N.E.2d 977, 982 (Ind.1983). A police officer who, while acting within the regular course of her duties, overhears an inmate's volunteered and unsolicited statement has not performed an interrogation. We therefore conclude that the trial court properly admitted evidence of Broome's overheard statement.

## EXCLUSION OF EVIDENCE

Broome also assigns error to the trial court because it refused to admit particular evidence which he sought to introduce at trial. Conducting direct examination, Broome's counsel sought to elicit, from Donald Watson, testimony which described particular aspects of Murray's homosexual conduct. Watson would have testified that Murray had a reputation for picking up heterosexual men and for attempting to have sex with them. The trial judge ruled that this testimony was not admissible at trial. Defense counsel also attempted, on direct examination, to elicit testimony in which Tracy Smith described a sexual encounter he had with Murray. Smith would have testified that he was picked up by Murray, that Murray showed Smith a pornographic magazine, that Murray masturbated himself and invited Smith to do the same, and that Murray then performed oral sex on Smith. The trial judge also excluded this testimony.

 Broome's attorney sought to admit this evidence because he believed that it tended to support the version of the facts upon which Broome's self-defense claim rested.[4] He argued that Watson's testimony was admissible under Indiana Evidence Rule 404(a)(2), which states:

(a) **Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

Our self-defense statute, in relevant part, states:

A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury[5] to himself or a third person or the commission of a forcible felony.[6]

Ind.Code. § 35–41–3–2(a) (footnotes added). "To prevail on a claim of self-defense, a defendant must prove that she was in a place where she had a right to be, that she acted without fault, and that she had a reasonable fear or apprehension of death or great bodily harm." *Pointer v. State*, 585 N.E.2d 33, 36 (Ind.Ct.App.1992).

 Watson's testimony was inadmissible because it was not relevant. Evidence is relevant when it tends to make more or less probable the existence of a fact which is of consequence to the determination of an action. Evid. R. 401. It is apparent that the facts which were of consequence to Broome's self-defense claim would not have been made more or less probable by Watson's testimony. Broome, to successfully establish his self-

---

**4.** In Broome's version of the facts, Murray picked up Broome in Anderson. As he began to drive toward Hamilton County, Murray offered Broome beer and bourbon, which Broome accepted and consumed. Murray showed Broome a pornographic magazine and told Broome that they were going to meet some women. After Murray parked the truck on a country road in Hamilton County, he pulled his pants down, began to masturbate himself, and invited Broome to do likewise. Broome declined Murray's invitation. Murray then attempted to masturbate Broome, but Broome pushed Murray away. Murray pointed a gun at Broome and indicated that he was interested in oral sex. Murray then placed the gun on the truck dashboard and began to perform oral sex on Broome. In an effort to make Murray stop what he was doing, Broome removed the gun from the dashboard

and pointed it at Murray. Broome and Murray then struggled over the gun, and, during this struggle, Murray was shot and killed.

**5.** " 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–25.

**6.** " 'Forcible felony' means a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." Ind.Code § 35–41–1–11.

defense claim, was required to demonstrate the fact that he had a reasonable belief the use of deadly force was needed to prevent either serious bodily injury to himself or the commission of a forcible felony. But Watson's testimony could not have demonstrated Broome's reasonable belief in the need to prevent serious bodily injury or the commission of a forcible felony, because nothing in this testimony would have indicated that Murray had a reputation for physically injuring, or using force against, the objects of his sexual advances. Watson's testimony was therefore not probative of the fact which Broome needed to demonstrate, and it was properly excluded by the trial court.

█ We also conclude that the trial court did not err when it excluded testimony of Tracy Smith. Defense counsel sought to admit Smith's testimony under Evidence Rule 404(b) which, in relevant part, states:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Under 404(b), Smith's testimony might have been used to show, *inter alia*, that Murray intended, prepared, or planned, to seduce Broome. But this testimony, which described a consensual homosexual encounter and which did not indicate that Murray used force or violence, would not have helped the jury determine whether Broome reason-

ably believed that he needed to protect against serious bodily injury or the commission of a forcible felony. Smith's testimony was not probative of Broome's self-defense claim, and the trial judge did not err when he excluded it.[7]

### JURY INSTRUCTIONS

█ Broome claims that the trial court committed error when it gave jury instructions which stated that, if particular elements of the crime are either proven or not proven beyond a reasonable doubt, the jury "should" find the defendant either guilty or not guilty. Broome argues that to tell the jury what it "should" do is to improperly abrogate the jury's right, enunciated in the Indiana Constitution, to determine the law and the facts in a criminal case. We cannot agree with Broome's claim. If the trial judge instructs the jury that it is the judge of the law and the facts, and if he delineates the material allegations the state is required to prove, then he does not commit error when he instructs the jury that it either "should" or "should not" convict the defendant. *See Loftis v. State*, 256 Ind. 417, 419–20, 269 N.E.2d 746, 747 (1971). Because Broome's jury was instructed that it was the judge of the law and the facts, and because the trial judge set forth the material allegations the state needed to prove, Broome's jury was properly instructed.[8]

### INVOLUNTARY MANSLAUGHTER INSTRUCTION

█ Broome, who was charged with murder, argues that the trial court committed

---

7. Broome has also argued that, under Evidence Rule 406, his proffered testimony is admissible as evidence of Murray's habit. But evidence that Murray was in the habit of picking up men and seducing them does not aid the determination of whether Broome reasonably believed that serious bodily injury, or the commission of a forcible felony, was at hand. This evidence was not probative of Broome's self-defense claim.

8. Broome also contends that the trial court erred when it instructed the jury that he should be found guilty if the state proved beyond a reasonable doubt that the elements of murder or of voluntary manslaughter were fulfilled. To so instruct, claims Broome, is to mislead the jury because, if he were to present a successful self-

defense claim, a jury should not find him guilty, even if the elements of murder or of voluntary manslaughter were met.

Broome acknowledges that *Mitchem v. State*, 503 N.E.2d 889, 891 (Ind.1987), sanctions the manner of instruction of which he complains. But he seems to argue that his jury manifested confusion when it requested that the trial court reread the definitions of murder, voluntary manslaughter, and reckless homicide, and that, when such confusion exists, the trial court's manner of instruction is erroneous. We do not understand the relevance of this argument, but we believe that, even if Broome's jury had been confused, the trial court's manner of instruction was nevertheless proper under *Mitchem*.

reversible error when it refused to instruct the jury on involuntary manslaughter, which he claims is a lesser-included offense of murder. To determine whether an instruction on a lesser-included offense should be given, the court must first ask whether the alleged lesser-included offense is either inherently or factually included in the crime which is charged. *See Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). If the court decides that the alleged lesser-included offense is either inherently or factually included in the crime which is charged, then:

it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Id.,* at 567 (citations omitted).

 Involuntary manslaughter is factually included in the charge of murder when the killing is accomplished by a touching. *Anderson v. State,* 681 N.E.2d 703, 709 (Ind. 1997). To kill with a gunshot is to kill by a touching. *See Lynch v. State,* 571 N.E.2d 537, 538–39 (Ind.1991). Because Broome killed Murray by gunshot, involuntary manslaughter, in this case, is factually included in the charge of murder.

We must now determine whether there is a serious evidentiary dispute about the element which distinguishes involuntary manslaughter from murder. Because the element of intent distinguishes the two offenses,[9] the trial judge would have been required to give an involuntary manslaughter instruction only if there were a serious evidentiary dispute about what Broome intended when he killed

Murray. *See Lynch,* 571 N.E.2d at 539 (holding that "the lesser included instruction [on involuntary manslaughter] will be warranted only if there is a serious evidentiary dispute about what [defendant] intended to do—kill or batter.").

 The jury was presented with evidence that Broome, when he pointed a gun at Murray, was attempting to stifle the latter's sexual advance. The jury also heard evidence that the two men may have engaged in a struggle for possession of the gun. There was also undisputed evidence at trial that Broome shot Murray in the face at close range. We believe that no serious dispute exists with respect to this evidence which, even if it indicates that Broome shot Murray in self-defense, does not indicate that Broome intended to batter rather than to kill Murray. When a gun's barrel is pointed at a person's head, to pull the gun's trigger is to create a substantial risk of death. This must be obvious to the one who pulls the trigger, and this must have been obvious to Broome, who, when he shot Murray's face at close range, had to have been aware that Murray would die. Because the evidence indicates that Broome intended to kill Murray and did not intend to batter him, we cannot say that there is a serious evidentiary dispute about Broome's intent. We therefore find that the trial court, when it refused to provide an involuntary manslaughter instruction, acted properly.

### SUFFICIENCY OF THE EVIDENCE

 Review of insufficient evidence claims does not involve reweighing the evidence or judging the credibility of witnesses. Rather, the appellate court will consider only the evidence most favorable to the verdict, and any inferences reasonably drawn therefrom. A verdict supported by substantial evidence of probative value will be affirmed. *See Pointer,* 585 N.E.2d at 34. Broome claims that the evidence adduced at his trial does not sufficiently support his conviction of voluntary manslaughter. In his confession,

---

**9.** *Compare* Ind.Code § 35–42–1–1 *with* Ind.Code § 35–42–1–4. *See also Simpson v. State,* 628

N.E.2d 1215, 1221 (Ind.Ct.App.1994).

he indicated that he was agitated and repulsed by Murray's sexual advance and that, during the course of their physical struggle, he shot Murray. By considering only this evidence, a reasonable jury could find that Broome, while acting under sudden heat, knowingly killed Murray. Broome's voluntary manslaughter conviction is therefore supported by sufficient evidence.

■■■ Broome also seems to argue that his claim of self-defense was not overcome by sufficient evidence. The evidence, he contends, does not sufficiently support a finding that the state met its burden of negating Broome's self-defense claim.

> To obtain a conviction once self-defense has been raised, the prosecution must disprove the existence of at least one of the three elements [10] of self-defense beyond a reasonable doubt. The prosecution may refute self-defense by direct rebuttal, or by relying upon the sufficiency of the evidence in its case in chief. The decision whether a claim of self-defense has been disproved is entrusted to the factfinder. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the prosecution beyond a reasonable doubt.

*Pointer,* 585 N.E.2d at 36 (citations omitted) (footnote added). It is undisputed that Murray was unarmed when he was shot and killed. In view of this fact alone, a reasonable person could find, beyond a reasonable doubt, that Broome did not reasonably believe his use of deadly force to be necessary and that, therefore, his claim of self-defense had been disproved. We conclude that the evidence sufficiently overcame Broome's self-defense claim.

### PRESENTENCE INVESTIGATION REPORT

■■■ Broome claims that his presentence investigation report was improperly prepared and that he therefore was prejudiced when the trial judge relied upon it during the sentencing process. If a presentence report is improperly prepared, the defendant suffers no prejudice when the trial judge (1) does not adopt the probation officer's sentencing recommendations and (2) provides sufficient reasons for the sentence which is imposed. *See Lang v. State,* 461 N.E.2d 1110, 1115 (Ind.1984). Even if the trial judge had "relied" in some measure upon the presentence report, Broome could not have been prejudiced because his trial judge refused to adopt the report's sentencing recommendation and, by explaining how he weighed the aggravating and mitigating factors, provided sufficient reasons for the sentence to be imposed. We therefore conclude that the trial judge's treatment of the presentence report was proper and did not prejudice Broome.[11]

### LENGTH OF SENTENCE

■■■ Broome's 45–year prison sentence exceeded the presumptive voluntary manslaughter sentence which was in force at the time of his conviction. He argues that this enhanced sentence is manifestly unreasonable. "Sentencing decisions rest within the sound discretion of the trial court and we will reverse only upon a manifest abuse of that discretion." *Singer v. State,* 674 N.E.2d 11, 13 (Ind.Ct.App.1996). "The trial court's wide discretion extends to the determination of whether to increase presumptive penalties...." *Id.* "When a sentence is enhanced ... the trial court must set forth a statement of its reasons for selecting a particular punishment." *Id.* "The trial court's statement must identify all significant mitigating and aggravating circumstances, include a specific reason why each circumstance is mitigating or aggravating, and weigh mitigating circumstances against the aggravating factors." *Sims v. State,* 585 N.E.2d 271, 272 (Ind.1992). "As long as the record indicates that the trial court engaged in the evaluative processes and the sentence was not manifestly unreasonable, the purposes of the sentencing statement have been

---

**10.** The three elements of self-defense appear in *Pointer,* 585 N.E.2d at 36.

**11.** Because we find that Broome suffered no prejudice, we decline to address Broome's claim that the trial court erroneously denied his motion to strike the presentence investigation report.

satisfied." *Singer*, 674 N.E.2d at 14. "The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B).

Before sentencing Broome, the trial judge set forth aggravating factors and mitigating factors. He found that the aggravating factors outweighed the mitigating ones. He then enhanced the presumptive voluntary manslaughter sentence, ordering Broome to serve 45 years in prison.

The trial judge did not abuse his discretion when he enhanced Broome's prison sentence. He identified the aggravating and mitigating circumstances, discussed them, and weighed them against each other. In open court, he articulated much of the evaluative process in which he engaged. On this record, and in light of the nature of the offense [12] and the character of the offender, we cannot say that the 45–year sentence is manifestly unreasonable.

Affirmed.

CHEZEM and RUCKER, JJ., concur.

---

12. Broome has emphasized, and we are troubled by, the fact that the trial judge, at the sentencing hearing, indicated that Broome was being sentenced for the crime of murder rather than for the crime of voluntary manslaughter. The trial judge at one time stated, "the Court notes that the Defendant committed this *murder* while he was on an adult probation...." R. 2355 (emphasis added). At another time, the trial judge remarked that "the defense has made a point that the victim of the crime induced or facilitated the offense.... I cannot believe though that the facilitation of the offense was that to the end of *murder*." R. 2360–61 (emphasis added). These references to murder were, at the very least, inappropriate; but the fact that such references were made does not change our conclusion that Broome's 45–year voluntary manslaughter sentence is not manifestly unreasonable.