ATTORNEY FOR APPELLANT
Ann M. Sutton
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Stephen R. Creason
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S00-0510-CR-477

JEFFREY VOSS,                                        *Appellant (Defendant below),*

v.

STATE OF INDIANA,                            *Appellee (Plaintiff below).*

Interlocutory Appeal
from the Marion Superior Court No. 49G02-0412-MR-232452
Hon. Judges Robert R. Altice, Jeffrey V. Boles, and Grant W. Hawkins

**November 22, 2006**

**Dickson, Justice.**

Defendant Jeffrey Voss, charged with murder and facing the State's request for the death penalty, challenges proceedings culminating in a change from the judge originally assigned to this case. This interlocutory appeal is brought pursuant to the trial court's unrestricted grant of the defendant's request for certification of an interlocutory appeal on the following issues: "whether the State's submission was adequate as a matter of law to challenge the bias of the judge; whether a special judge may be appointed, over objection, to decide the recusal of a judge; and whether the finding of recusal by the special judge was sufficient as a matter of law." Appellant's App'x. at 224. We find both that the State's motion for change of judge was insufficient and that it was error to appoint a special judge to decide the motion.

On January 4, 2005, the State charged the defendant with the strangulation murder of twelve-year-old Christina Tedder, three counts of criminal confinement of her, and one count of obstruction of justice. The case was assigned to Marion Superior Court Criminal Division, Room Five, Judge Grant W. Hawkins presiding. At the initial hearing the next day, a "preliminary plea" of not guilty was entered for the defendant. *Id*. at 6. The State filed an amended information on March 10, reasserting the initial counts and additionally charging that the defendant had committed child molestation against Christina. An initial hearing on the amended information was scheduled for March 18, 2005. When the State filed the amended information, it also filed its request for the death penalty, alleging that the defendant intentionally killed Christina while on probation relating to the defendant's 1991 conviction for class B felony robbery. Thirteen days later, the State, citing Indiana Criminal Rule 12(B), filed a motion requesting that Judge Hawkins "remove and disqualify himself as judge" or, in the alternative, that the case "be transferred to another judge to hold an evidentiary hearing and rule upon the instant motion." *Id*. at 135-36. This motion was initially heard by Judge Pro Tempore Ralph W. Staples, Jr., who, citing Indiana Trial Rule 79(C) and the comment to Indiana Code of Judicial Conduct Canon 1, declined to rule, noting that he "became aware of media accounts . . . that appear to call into question the Court's [here, Judge Pro Tempore Staples] continued ability to provide the parties with the fundamental fairness before the tribunal that is required by law." *Id.* at 163. To illustrate, Judge Staples appended a web page news report by Eric Berman, *Judge Could Be Removed from Death Penalty Case*, 1070 WIBC—WIBC.com, April 9, 2005, reporting that "[t]o hear the motion, Hawkins appointed . . . Ralph Staples, who clashed with [the Marion County Prosecutor] before leaving the office this year." *Id*. at 165. In his entry, Judge Staples requested that Judge Hawkins "select a different jurist to rule" upon the motion. *Id.* at 166. Following another request by the State for Judge Hawkins to transfer its recusal motion to another judge,[1] Judge Hawkins issued an order reviewing the circumstances of the ruling by Judge Staples; expressing the desire that the motion be determined by "a jurist who has been willing to impose the death penalty and is not politically or socially associated with the Court, the Office of the Marion

---

[1] Although the trial court authorized the defendant to file any objections by April 22, 2005, the defense did not respond until April 28 when it tendered its response along with a motion for leave for belated filing. Appellant's App'x. at 186. The trial court denied the motion as moot, noting that its order of determination had already been dictated. *Id*.

County Prosecutor or either counsel for the defense;" and appointing Hendricks Circuit Court Judge Jeffrey V. Boles to decide the recusal motion. *Id.* at 191-94. On May 26, 2005, after a review of the documents and transcripts, Judge Boles directed that the case be reassigned "on a random basis to a Marion Superior Criminal Divison G Court 1, 2, 3, 4, 6, or 20." *Id.* at 211. The case was then assigned to Room G02, Judge Robert Altice presiding. On July 21, 2005, Judge Altice granted the defendant's June 27, 2005, motion for a stay in the trial court proceedings and for interlocutory appeal certification. As required by Indiana Appellate Rule 14(B)(2), the defendant then petitioned for appellate acceptance of the interlocutory appeal, and he then requested that this Court assume expedited appellate jurisdiction under Indiana Appellate Rule 56(A) to address the interlocutory appeal. We granted these requests.

This interlocutory appeal raises three issues: (1) the adequacy of the State's submission seeking a change of judge; (2) the propriety of appointing a special judge to rule upon a change of judge request; and (3) the legal sufficiency of the ruling by Judge Boles reassigning the case from Judge Hawkins.

### 1. Adequacy of the State's submission challenging bias of the judge

The relevant grounds applicable to requests for changes of judge in Indiana criminal cases are set forth in Indiana Criminal Rule 12, section (B), which provides as follows:

> **(B) Change of Judge—Felony and Misdemeanor Cases.** In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

Adjudicating a request for change of judge based on Rule 12(B) requires an objective, not subjective, legal determination by the judge, who is "to examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of

bias or prejudice." Sturgeon v. State, 719 N.E.2d 1173, 1181 (Ind. 1999). This version of Rule 12 contrasts with the former provisions of Rule 12, which required a party seeking a change of judge to establish actual personal bias. *Id.*[2] Under the present rule:

> A party is entitled to a change of judge only "if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Crim. R. 12(B). This is not limited to cases in which the judge has expressed an opinion on guilt or innocence or the merits of the case. It does not depend on a subjective showing that the trial judge is actually biased or prejudiced. In considering a motion for change of judge, the challenged judge's ruling does not depend upon a self-assessment of actual bias or prejudice. The judge must instead determine whether the historical facts presented in support of the motion lead to a rational inference of bias or prejudice.

Allen v. State, 737 N.E.2d 741, 743 (Ind. 2000). A change of judge is neither automatic nor discretionary, but rather requires the trial judge to make a legal determination, not a self-analysis, of actual bias or prejudice. Sturgeon, 719 N.E.2d at 1181; Allen, 737 N.E.2d at 743.

The State's motion seeking the removal of Judge Hawkins was accompanied by a separate affidavit and a certificate of good faith, each executed by the Marion County Prosecutor, and also a brief in support of the motion. In its motion, the State asserted its belief that Judge Hawkins "is biased or prejudiced against the death penalty statute" and "biased or prejudiced against the State of Indiana in this death penalty prosecution," and asserted facts in its motion and affidavit as support for its claim. Appellant's App'x. at 136. The accompanying affidavit asserted specific prior decisions in which Judge Hawkins had ruled that the death penalty was unconstitutional (although his rulings were later reversed); several media quotations of remarks by Judge Hawkins that the affidavit characterizes as critical of the death penalty; and instances of specific

---

[2] The current version of Rule 12(B) was amended effective February 1, 1995, and the previous version, contained within an undivided version of Rule 12, stated, in relevant part:

> [I]f the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.

Ind. Crim. Rule 12 (1994).

4

conduct by Judge Hawkins before he became a judge, when he was representing criminal defendants facing the death penalty. *Id*. at 132-34.

*a. Judge's prior rulings*

The State first points to three prior orders by Judge Hawkins, each ruling that the Indiana death penalty statute is unconstitutional. On September 10, 2001, Judge Hawkins granted defendant Charles E. Barker's motion to dismiss the death penalty, finding Indiana's death penalty statute unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was decided while Barker's case was on appeal. This Court reversed the trial court's order in a decision that referenced Saylor v. State, 765 N.E.2d 535 (Ind. 2002), a case this Court had decided about one month earlier that had also raised the constitutionality of Indiana's death penalty statute in light of the Apprendi decision. State v. Barker, 768 N.E.2d 425, 426 (Ind. 2002). Judge Hawkins again found the Indiana death penalty statute unconstitutional in Barker and Ben-Yisaryl—two nearly identical orders both dated June 27, 2003[3]—in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and both of which this Court reversed in companion cases dated May 25, 2004. State v. Barker, 809 N.E.2d 312, 318-19 (Ind. 2004); State v. Ben-Yisaryl, 809 N.E.2d 309, 311 (Ind. 2004).

Prior judicial rulings generally do not support a rational inference of prejudice. Garland v. State, 788 N.E.2d 425, 433 (Ind. 2003). Adverse rulings and findings by a trial judge from past proceedings with respect to a particular party are generally not sufficient reasons to believe the judge has a personal bias or prejudice. Lasley v. State, 510 N.E.2d 1340, 1342 (Ind. 1987); Thomas v. State, 486 N.E.2d 531, 533 (Ind. 1985). The mere assertion that certain adverse rulings by a judge constitute bias and prejudice does not establish the requisite showing. Ware v. State, 567 N.E.2d 803, 806 (Ind. 1991).

Of course, there may be circumstances in which a rational inference of prejudice may be established from a judge's prior orders if the orders are sufficiently egregious; for example, if a judge on numerous occasions, and in the absence of a good faith judicial basis, repeatedly avoids

---

[3] Marion Superior Court cause numbers 49G05-9308-CF-095544 and CR84-076E.

5

or refuses to permit the State to properly seek a death penalty. Such circumstances, however, are not established by the State's affidavit in the present case.

Although the cited death penalty decisions of Judge Hawkins were reversed on appeal, his decisions in each were supported by reasonable legal argument and the applicable law was subject to a good faith difference of opinion at the time.

*b. Judge's public comments*

The State's second allegation of bias is based on statements attributed to Judge Hawkins by the *Indiana Lawyer*, a bi-weekly newspaper serving the Indiana legal community. Following his ruling in Barker in 2001, Judge Hawkins was interviewed by a reporter whose resulting article quoted him as stating, in pertinent part:

> [T]he death penalty has to be done perfectly every time and that's impossible right now. Innocent people are getting it, look at Illinois, Judge Hawkins said. You have to revisit the death penalty to see if people still want it. Records show that 74 percent of people believe in it. But with life without parole, 80 percent of the people like it.

Appellant's App'x. at 132.

The relevant inquiry under Rule 12(B) is whether such public comment supports a rational inference of bias or prejudice. We think not. Judges are encouraged "to speak and participate in extra-judicial activities 'concerning the law, the legal system, the administration of justice, and non-legal subjects,'" and such participation is a "valuable component of the public service provided by the judiciary." Allen, 737 N.E.2d at 744 (quoting Ind. Judicial Conduct Canon 4(B)) (rejecting a claim that the defendant, on trial for battery, criminal confinement and intimidation of his estranged wife, was entitled to a change of the judge based upon the judge's appearance and participation with organizations seeking to assist victims of domestic violence).

Citizens who serve as judges are likely to have personal opinions and values with respect to a variety of legal and social issues. But, as judges, they are required to "be faithful to the law" and "not be swayed by partisan interests." Indiana Judicial Canon 3(B)(2). The fact that a judge may have a personal opinion regarding an issue in a case does not, standing alone, create a

6

rational inference that the judge's decision will be governed by bias and prejudice. To the contrary, we presume that judges will set aside their personal values and opinions and will impartially follow the law. We recognize that situations may occur wherein the nature or content of a judge's public expressions of personal opinion may strongly suggest that the judge may be unable or unwilling to set aside personal opinion in judicial decision-making. Such circumstances would support a rational inference of bias or prejudice, requiring the judge to disqualify from the case.

The comments attributed to Judge Hawkins reflect his concern regarding the necessity for extreme care in judicial administration of death penalty cases, but they do not indicate or suggest that he would hesitate to fully follow the law and impose a sentence of death where appropriate.

   c.  *Judge's prior clients as lawyer*

As for the State's final allegation, the public record shows that before joining the bench Judge Hawkins represented three defendants accused of capital crimes, two of whom ultimately received a death sentence. According to the State, Judge Hawkins later testified that his "representation in those death penalty cases was ineffective." Appellant's App'x. at 133. This allegation sheds no light on the question of alleged bias or prejudice on the part of Judge Hawkins against the State. And the State cites no authority in support. Rather, in its brief, the State contends that "[t]hese facts, while perhaps not supporting a rational inference of bias or prejudice on their own, properly support such an inference when considered along with Judge Hawkins's actions and statements since taking the bench." Appellee's Br. at 9. We disagree.

A lawyer's representation of criminal defendants facing the death penalty does not provide a rational inference that the lawyer, if subsequently serving as a judge, will be biased or prejudiced in cases involving the death penalty. *Cf.* Broome v. State, 687 N.E.2d 590, 596-97 (Ind. Ct. App. 1997) (finding a trial judge's previous service as the county prosecutor and hiring

7

and training of the prosecutor in defendant's case did not establish judge's bias or prejudice), *summarily aff'd in part, aff'd on other grounds in part*, 694 N.E.2d 280 (Ind. 1998).

We conclude, as a matter of law, that the historical facts recited in the affidavit do not support a rational inference of bias or prejudice, and thus the State's submission was inadequate to support a change of judge under Criminal Rule 12(B).

## 2. Appointment of special judge to decide recusal

The defendant contends that it was improper to appoint Judge Boles or any other judge as a special judge to decide the State's motion for change of judge. The defendant argues that such an appointment is not authorized by statute or rule, that it causes unnecessary delay, and that the sitting judge is in the best position to evaluate the merits of the motion. The State responds that current law permits, but does not compel, a sitting judge to rule on a motion for a change of judge. The State also argues that Judge Hawkins did not appoint Judge Boles as a "special judge" but rather as a "hearing judge," equivalent to "appointing an out-of-county attorney as judge pro tempore." Appellee's Br. at 15.

We initially note that Judge Hawkins did not reassign the case to Judge Boles nor appoint him either as a special judge or a judge pro tempore. Rather, he ordered that the case "be transferred" to Judge Boles "for resolution of the recusal issue raised by the State." Appellant's App'x. at 194. The reassignment of cases and the selection of special judges in criminal cases is governed by Criminal Rule 13, which contemplates that the successor judge will preside over all further proceedings in a case. Such an appointment is not a temporary appointment for the resolution of a single issue, but operates to transfer all future handling of the case to the new judge. Judge Hawkins did not purport to appoint Judge Boles as a special judge pursuant to Rule 13.

Likewise, Judge Hawkins did not intend to appoint Judge Boles as a judge pro tempore. The order purported to transfer the case to Judge Boles "for resolution of the recusal issue," *id.* at

8

194, and not because Judge Hawkins was "unable to attend and preside at his court for any cause," the only basis for a judge pro tempore appointment under Indiana Trial Rule 63(E).[4]

The required determination—whether the asserted facts, treated as true, support a rational inference of bias or prejudice—is the type of evaluation that judges do frequently in the ordinary course of their work. Sound judicial policy does not require this decision to be made by a person other than the sitting judge.[5] We hold that it was improper for the trial court to appoint another judge to rule on the Criminal Rule 12(B) motion in this case. [6]

### 3. Disqualification under the Code of Judicial Conduct

While holding that the State's motion for change of judge is inadequate under Criminal Rule 12(B), we make no determination regarding whether Judge Hawkins should nevertheless disqualify himself in this case. A judge must "perform judicial duties without bias or prejudice." Jud. Canon 3(B)(5). Irrespective of whether a request for change of judge under Criminal Rule 12(B) was filed, Judge Hawkins has the same continuing obligation as every other Indiana judge to sua sponte disqualify himself "in a proceeding in which the judge's impartiality might reasonably be questioned." Jud. Canon 3(E)(1). This includes, but is not limited to, instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer." Jud.

---

[4] Temporary judges appointed by circuit, superior, and county judges pursuant to Indiana Code § 33-38-11-1 "may serve even though the judge of the court is present and presiding in the court." Ind. Code § 33-38-11-11. But each such temporary judge must be "a resident of the judicial district of the court after the temporary judge's appointment." I.C. § 33-38-11-1(a)(2). It is undisputed that Judge Boles, regular Judge of the Hendricks Circuit Court, is not a resident of Marion County.

[5] We acknowledge that the federal court system requires that another judge preside over a proceeding when a party files an affidavit indicating personal bias or prejudice on the part of the judge:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. We decline, however, to apply this practice to Indiana courts.

[6] We recognize that in Broome, 687 N.E.2d at 596, the Court of Appeals observed in dicta that a presiding judge "may, but need not, recuse himself when a hearing on the motion is necessary," possibly implying approval for a temporary referral to another judge to decide one aspect of the case. While we summarily affirmed this issue decided by the Court of Appeals, concluding that the trial judge properly heard the motion for change of judge, 694 N.E.2d at 281, we now expressly disapprove of the implication that an issue may be transferred to another judge to decide.

Canon 3(E)(1)(a). A judge's bias or prejudice with respect to a substantial issue in a case, even if not directly related to a party or a party's lawyer, can equally impair impartiality and should mandate disqualification.

In contrast to the process for ruling upon a Criminal Rule 12(B) motion for change of judge (evaluating whether the historical facts recited in the affidavit support a rational inference of bias or prejudice), Canon 3 requires a judge to consider a broad array of circumstances, not merely assertions of historical fact set forth in an affidavit. A judge must of course disqualify from a case upon realizing that the judge's own personal beliefs, values, or opinions are impairing his or her impartiality. Further, Canon 3(E)(1) also requires a judge to disqualify when a judge knows of facts or circumstances that might reasonably call into question the judge's impartiality. This obligation to disqualify exists notwithstanding a judge's earnest, subjective belief that he or she is fully able to perform judicial duties without bias or prejudice.

In his order purporting to transfer the State's motion for change of judge to Judge Boles for decision, Judge Hawkins described the State's request as "a vehicle to request the judge recuse himself based upon the Prosecutor's reading of the Commentary to Canon 3(E)(1) of the Code of Judicial Conduct, the section speaking to judicial disqualification in proceedings where the judge's impartiality might reasonably be questioned." Appellant's App'x. at 191-92. Citing May v. State, 578 N.E.2d 716, 719 (Ind. Ct. App. 1991), *trans. not sought*, Judge Hawkins expressed his belief that the

> best practice . . . would be for a different set of eyes to examine the State's assertions, examine the Criminal Rule upon which the assertion was founded, *examine the Judicial Canon* invoked in the State's pleading, determine the applicability of the Criminal Rule and the *Judicial Canons* to the evidence, and rule thereon.

Appellant's App'x. at 193 (emphasis added). For this purpose, Judge Hawkins initially named Ralph Staples as Judge pro tempore, upon whose recusal he ordered the case "transferred" to Judge Boles and explained:

> Seeking a jurist who has been willing to impose the death penalty and is not politically or socially associated with the Court, the Office of the Marion County Prosecutor or either counsel for the defense leads the Court to again grant the State's request that an alternate jurist determine the question of whether there is an *appearance of impropriety*.

*Id.* at 193-94 (emphasis added).

The circumstances presented in <u>May</u> did involve a limited appointment of a special judge to rule on May's motion for special judge. The special judge denied the motion and the regular judge resumed handling of the case. But there was no challenge to this procedure. The question presented was whether the limited special judge erred in denying the motion, not whether the regular judge erred in naming a special judge to decide the motion. The Court of Appeals opinion in <u>May</u> did not make any declaration of "best practice" or otherwise recommend or approve the limited appointment of another judge to decide a single issue.

By his reference to the "Judicial Canons" and "appearance of impropriety," however, it is apparent that Judge Hawkins intended the obligations imposed by the Code of Judicial Conduct to be considered in conjunction with any ruling on the State's motion for change of judge. Such consideration may involve a separate subjective determination that must be made personally by the sitting judge. The issue under the Judicial Canons may provide an independent basis requiring disqualification even if the analysis required for determination under Criminal Rule 12(B) would not require a change of judge. Of course, disqualification would be necessary if a judge personally recognizes that he or she is unwilling to impose the death penalty.

We also observe that such a determination under Canon 3(E)(1)(a) would not be appropriate for initial resolution by any judge other than the judge in question, who, considering facts and circumstances known to the judge but not presented in the record, must evaluate not only the actual effects of his or her own personal bias or prejudice, but also whether the judge's impartiality might reasonably be questioned by others. Such an issue is not properly addressed by a judge pro tempore. The determination of whether disqualification is necessary under Canon 3 must be made by the sitting judge.

**Conclusion**

We vacate both the May 26, 2006, order of Judge Boles implicitly granting the State's motion for change of judge and ordering reassignment of this case to a different judge, and the order of Judge Hawkins initially transferring the case to Judge Boles for ruling on the State's

11

recusal motion. We remand this case to Judge Hawkins so that he may personally consider whether to disqualify himself from the case if he deems it appropriate pursuant to Canon 3(E) of the Code of Judicial Conduct, and for any further proceedings consistent with this opinion.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.